FILED
COURT OF APPEALS
DIVISION II

2013 NOV 19 AM 8: 38

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42752-4-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| JOHNNIE G. BROWN, | |
| Appellant. | |

BJORGEN, J. — After a trial conducted partially in absentia, a jury found Johnnie Gerard

Brown guilty of child rape and incest. Nine years later, authorities apprehended Brown, who had

absconded to another state, and returned him to Washington for sentencing. The sentencing

court declined to order a presentence report before imposing the maximum standard-range term

of incarceration. Brown appeals, arguing (1) that the trial court improperly tried him in absentia

in violation of his right under CrR 3.4 to be present at all stages of trial and (2) that the

sentencing court committed reversible error when it sentenced him for a felony sex offense

without first ordering a presentence report. Because his trial had commenced before Brown

absconded, we affirm the convictions. Because the trial court did not order or consider the

No. 42752-4-II

presentence report mandated by former RCW 9.94A.110 (2000) before sentencing Brown for a felony sex offense, we vacate the sentence and remand for resentencing.

FACTS

The State charged Brown with two counts of second degree child rape or, in the alternative, two counts of first degree child molestation; and one count of first degree incest. Having posted a $100,000 bail bond, Brown appeared out of custody on April 17, 2002, and was present when the trial court called the case for trial and administered the initial oath to the 50-person venire. After introducing the attorneys to the venire and giving preliminary instructions, the trial court excused the potential jurors with instructions to fill out a questionnaire and return the following day.

Brown appeared the next day and was present when the State moved to strike the jury venire because "the case ha[d] gotten more complicated." Verbatim Report of Proceedings (VRP) (Apr. 17, 2002) at 19. The defense joined the motion. Both sides expressed concern that as many as half of the potential jurors had personal reservations related to the nature of the case or wanted to be questioned privately, and both sides wanted additional time to interview newly-discovered potential witnesses and make related motions. Brown's counsel stated that "[f]rom the defense perspective, I couldn't imagine that we could get a worse draw of jurors" with a different venire. VRP (Apr. 17, 2002) at 21. With Brown still present, the trial court excused the venire and "recess[ed] the case until May 6th." VRP (Apr. 17, 2002) at 32-33. As soon as the jurors left, the court began hearing testimony on the admissibility under CrR 3.5 of statements Brown made to police.

2

No. 42752-4-II

Brown appeared again on April 22, 2002, and the court heard testimony and argument on the competency of two child witnesses and the admissibility under ER 404(b) of other child sex abuse accusations against Brown. The court scheduled the final ER 404(b) testimony for May 6 and the swearing in of a new jury venire for May 7.

Brown did not appear on May 6, 2002.[1] His counsel affirmed that Brown had been informed the proceedings would continue on that date and that counsel had made every effort to contact him. On May 15, the court reconvened, made preliminary determinations that trial had commenced and Brown's continuing absence was voluntary, and decided to proceed in absentia if Brown's whereabouts remained unknown the following day.

Brown did not appear, and the trial court administered the oath to a new venire on May 20, 2002. A jury was selected and began hearing testimony in Brown's absence the next day. The jury returned a verdict of guilty on the incest count and on both child rape counts.

After his extradition nine years later, Brown appeared in custody for sentencing on October 7, 2011. At the hearing, Brown's defense counsel requested a continuance, informing the court that "[t]here's been no presentence investigation conducted in this case, and that's mandatory in a sex case." VRP (Oct. 7, 2011) at 8. The prosecutor expressed the belief that the statute in effect at the time of Brown's conviction did not require such a report. The trial court agreed that no report was required and imposed the maximum standard-range sentence for each count, to run concurrently, for a total of 280 months.

Brown timely appeals.

---

[1] Brown's location remained unknown to the court until shortly before his August 3, 2011 extradition.

3

No. 42752-4-II

ANALYSIS

I. TRIAL IN ABSENTIA

Brown argues that the trial court improperly tried him in absentia in violation of his right to be present. Specifically, Brown asserts that the trial did not "commence" in his presence for purposes of CrR 3.4, even though a venire took the oath in his presence, because the jury that determined his guilt was selected from a different panel, one not sworn in Brown's presence.

Whether a defendant who witnessed the swearing of a venire may properly be tried in absentia before a jury selected from a different venire appears to be an issue of first impression. Because the requirement that trial commence in the defendant's presence is intended to ensure that waiver of the right to be present at trial is knowing, and because shortly before his disappearance Brown witnessed the swearing of a jury panel to try him for the same charges on which he was convicted, we hold that trial had commenced and the court below properly tried Brown in absentia.

We review construction of court rules de novo. *State v. Bertrand*, 165 Wn. App. 393, 414, 267 P.3d 511 (2011) (citing *State v. Robinson*, 153 Wn.2d 689, 693, 107 P.3d 90 (2005)), *review denied*, 175 Wn.2d 1014, 287 P.3d 10 (2010). We interpret a court rule as though it were enacted by the legislature, giving effect to its plain meaning as an expression of legislative intent. *State v. Chhom*, 162 Wn.2d 451, 458, 173 P.3d 234 (2007). Plain meaning, in turn, is discerned by "reading the rule as a whole, harmonizing its provisions, and using related rules" to help identify the intent behind it. *Chhom*, 162 Wn.2d at 458.

4

> CrR 3.4, Presence of the Defendant, provides in relevant part:
>
> (a) When Necessary.
> *The defendant shall be present at the arraignment, at every stage of the trial including the empaneling of the jury* and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules, or as excused or excluded by the court for good cause shown.
> (b) Effect of Voluntary Absence.
> *The defendant's voluntary absence after the trial has commenced in his or her presence shall not prevent continuing the trial* to and including the return of the verdict.

(Emphasis added.) Trial in absentia, although disfavored, is therefore proper in Washington if "trial commenced" in a criminal defendant's presence and the defendant's absence is voluntary.[2] *State v. Jackson*, 124 Wn.2d 359, 361, 878 P.2d 453 (1994) (citing CrR 3.4).

We interpret CrR 3.4 in a manner parallel to the federal courts' interpretation of Federal Rule of Criminal Procedure 43. *State v. Hammond*, 121 Wn.2d 787, 790-93, 854 P.2d 637 (1993). In *State v. Crafton*, 72 Wn. App. 98, 103, 863 P.2d 620 (1993), we held that under CrR 3.4, trial commences no sooner and no later than when the jury panel is sworn for voir dire. In reaching this conclusion, we noted that "'when the jury panel is sworn for voir dire, the defendant is given an unambiguous and readily discernible sign that trial is beginning and he or she will have the opportunity to participate in jury selection.'" *Crafton*, 72 Wn. App. at 103 (quoting *State v Thomson*, 70 Wn. App. 200, 211, 852 P.2d 1104 (1993), *aff'd*, 123 Wn.2d 877, 872 P.2d 1097 (1994)) (alteration omitted). This "bright-line" rule, *Crafton*, 72 Wn. App. at 103, "'serves to assure that any waiver [of the right to be present at trial] is indeed knowing.'"

---

[2] Brown does not assign error to the trial court's finding that he voluntarily absented himself from the proceedings and does not dispute the sentencing court's statement that "his absence was entirely voluntary and willful." VRP (Oct. 7, 2011) at 7. We therefore accept the finding as true. *See State v. Ellison*, 172 Wn. App. 710, 717, 291 P.3d 921 (2013).

5

*Thomson*, 123 Wn.2d at 883 (quoting *Hammond*, 121 Wn.2d at 792 and *United States v. Crosby*, 506 U.S. 255, 262, 113 S. Ct. 748, 122 L. Ed. 2d 25 (1993)).

The rule also serves, however, to ensure that "'the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward.'" *Taylor v. United States*, 414 U.S. 17, 20, 94 S. Ct. 194, 38 L. Ed. 2d 174 (1973) (quoting *Illinois v. Allen*, 397 U.S. 337, 349, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970) (Brennan, J., concurring)). Thus, we must also consider the governmental interest in conserving judicial resources and accurately determining innocence or guilt.

Brown argues that the use in CrR 3.4 of the definite article suggests that "the empaneling of the jury" refers to the same panel from which those jurors who actually hear the evidence in the case are selected. In light of the principles of construction set out in *Chhom* and the rule's purposes, however, the argument fails to persuade. Brown witnessed the swearing of a venire, and when the court excused the panel in Brown's presence, it gave a specific date, less than three weeks later, on which a new panel would be called and trial would resume. Brown was present for the swearing of the first venire and received specific, unambiguous notice that a new panel would be called on a date certain. To deem the trial to have commenced at this point under CrR 3.4 ensures that Brown's waiver of his right to be present was made with full knowledge.

Brown argues to the contrary that once the court excused the panel and announced the 18-day delay before a new panel would be called, there was no "'unambiguous and readily discernible sign'" that trial had commenced. Br. of Appellant at 11 (quoting *State v. Thomas*, 70 Wn. App. 200, 211, 852 P.2d 1104 (1993)). Instead, Brown maintains that the "clear message" was that trial would commence in 18 days.

6

If the trial court had simply dismissed the venire without setting any specific date for calling a new panel, or if the State had sought to substantially change the charges that the new panel would hear, Brown's argument that he did not have adequate notice might have more life. Brown, however, witnessed the swearing of a jury panel to try him for precisely the same charges of which he was ultimately convicted, and, upon excusing that panel, the trial court gave a specific date in the near future when it would call a new panel. One can imagine a situation where, because of the nature of the charges or the notoriety of the case, a trial court strikes so many venire members that a full jury cannot be impaneled from the pool originally called. A defendant who, at that point, despairs of obtaining a favorable verdict and chooses to flee should not escape trial merely because it becomes necessary to bring in additional venire persons. Indeed, Brown may have made exactly such a calculation here. The responses to the questionnaires apparently suggested that a large proportion of potential jurors would have difficulty viewing the evidence in a child sex abuse case favorably to the defendant, and Brown was faced with the possible admission of other child sex abuse accusations against him. Under these circumstances, where one venire has been sworn and the defendant has clear notice that a second will be sworn on a specific date in a reasonable time, the defendant should not have the option of stopping the trial because he sees his chances darkening. We hold that the trial had commenced for purpose of CrR 3.4, and the trial court therefore properly proceeded in Brown's absence. We affirm Brown's convictions.

II. THE TRIAL COURT'S REFUSAL TO ORDER A PRESENTENCE REPORT

Brown argues that the trial court erred in sentencing him without the benefit of a presentence report, in violation of former RCW 9.94A.110. Because the statute under which the

7

No. 42752-4-II

trial court sentenced Brown expressly mandated such a report, and we cannot assess what impact a report that does not exist might have had on the outcome, we vacate Brown's sentence and remand for resentencing.

"The trial court's discretion in sentencing is that which is given by the Legislature." *State v. Ammons*, 105 Wn.2d 175, 181, 713 P.2d 719, 718 P.2d 796 (1986). We review a trial court's interpretation of a statute de novo, and we derive the plain meaning of a statute "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11-12, 43 P.3d 4 (2002).

> The statute in effect at the time of Brown's conviction provided that
>
> the court shall, at the time of plea or conviction, order the [Department of Corrections] to complete a presentence report before imposing a sentence upon a defendant who has been convicted of a felony sexual offense . . . . The court shall consider the risk assessment and presentence reports.

Former RCW 9.94A.110, *recodified as* RCW 9.94A.500 (2002). This statutory language is mandatory and unambiguous. *State v. Q.D.*, 102 Wn.2d 19, 29-30, 685 P.2d 557 (1984) (noting that "use of the word 'shall' creates an imperative obligation unless a different legislative intent can be discerned") (citing *State v. Bryan*, 93 Wn.2d 177, 606 P.2d 1228 (1980)).

The State properly concedes that the statute required a presentence report and the Sentencing Reform Act's (SRA) prohibition on appeals of standard-range sentences does not bar Brown's appeal.[3] The State argues, however, that the failure to order the presentence report was

---

[3] RCW 9.94A.585(1) (former RCW 9.94A.210(1) (2000)) provides that a standard range sentence may not be appealed. However, our Supreme Court interpreted this provision "as only precluding appellate review of challenges to the amount of time imposed," not "the procedure by which a sentence within the standard range was imposed." *Ammons*, 105 Wn.2d at 182-83. To

harmless error because the sentencing court, on account of Brown's nine-year absence, would have imposed the maximum standard range penalty regardless of the contents of such a report. Whether harmless error analysis applies to a trial court's failure to consider a mandatory presentence report also appears to be an issue of first impression.

Nonconstitutional error requires reversal only if, "within reasonable probabilities," the outcome of the proceeding "would have been materially affected had the error not occurred." *State v. Crenshaw*, 98 Wn.2d 789, 800, 659 P.2d 488 (1983) (citing *State v. Tharp*, 96 Wn.2d 591, 637 P.2d 961 (1981)). In more typical cases applying harmless error analysis to sentencing hearings, a trial court allegedly considers information it should not have. In these cases, we simply look at the remaining, unchallenged information to see whether it independently supports the sentencing court's decision. *See, e.g., State v. Gutierrez*, 58 Wn. App. 70, 77, 791 P.2d 275 (1990), *abrogated on other grounds by State v. Ritchie*, 126 Wn.2d 388, 894 P.2d 1305 (1995); *State v. Whittington*, 27 Wn. App. 422, 430, 618 P.2d 121 (1980). Here, in contrast, the trial court failed to consider information it should have. In the absence of any presentence investigation, we can only speculate as to what information a report might have contained and what effect that information might have had on the outcome.[4] Thus, we cannot assess the probability of a different outcome, and therefore cannot apply harmless error analysis.

---

escape the SRA prohibition on appeals of standard range sentences an appellant must show that "the sentencing court had a duty to follow some specific procedure required by the SRA, and that the court failed to do so." *State v. Mail*, 121 Wn.2d 707, 712, 854 P.2d 1042 (1993). Because Brown does not challenge the length of the sentence, but argues that the court failed to follow a specific, mandatory duty, RCW 9.94A.585(1) does not bar Brown's appeal.

[4] The dissent cites this statement as evidence that our analysis rests on speculation and conjecture as to what a report might have contained. On the contrary, our point is that without knowing what the presentence report would say, it is impossible to apply the harmless error standard in a principled fashion, without descent into speculation.

In *State v. Crider*, 78 Wn. App. 849, 899 P.2d 24 (1995), Division Three of this court refused to apply harmless error analysis to a sentencing court's failure to invite the defendant to allocute before pronouncing sentence. The *Crider* court did so even though the sentencing court had permitted the defendant to speak immediately after pronouncing sentence, stood "ready and willing to alter the sentence when presented with new information," and the sentencing judge's comments indicated that it was "unlikely anything Mr. Crider might have said . . . would have changed" the outcome. *Crider*, 78 Wn. App. at 861. The *Crider* court explicitly based its holding on the right to allocute under the SRA, found in the same statutory provision at issue here, RCW 9.94A.500(1), not on any alleged constitutional right. *Crider*, 78 Wn. App. at 860.

The dissent points out that we refused to follow *Crider* in *State v. Hatchie*, 133 Wn. App. 100, 118, 135 P.3d 519 (2006), *aff'd*, 161 Wn.2d 390, 166 P.3d 698 (2007), and argues that our reliance on *Crider* here would require reversing *Hatchie*. What *Hatchie* declined to follow, however, was *Crider*'s blanket refusal to apply harmless error analysis when a sentencing court did not invite the defendant to allocute before imposing sentence. *Hatchie* held no error occurred where the defendant was allowed to allocute after the court's oral sentence and where the court expressly stated it would consider the allocution, due to the

> long standing rule that a court's oral opinion is no more than an oral expression of the court's informal opinion at the time rendered; it is "necessarily subject to further study and consideration, and may be altered, modified, or completely abandoned."

*Hatchie*, 133 Wn. App. at 118 (quoting *State v. Hescock*, 98 Wn. App. 600, 606, 989 P.2d 1251 (1999)). *Hatchie* also relied on the defendant's failure to request to allocute when the court said it was ready to rule. *Hatchie*, 133 Wn. App. at 118-19.

Brown's situation shares none of the defining characteristics of *Hatchie*. Unlike Hatchie's allocution, a presentence report for Brown was not presented to the court at any point; unlike Hatchie's silence, Brown requested a continuance to allow a presentence report before sentencing. Under *Crider*, consistently with *Hatchie*, harmless error analysis is not available to save the failure to prepare the required report.

The dissent relies also on our Supreme Court's recent decision in *In re Personal Restraint of Finstad*, 177 Wn.2d 501, 301 P.3d 450 (2013), for the proposition that failure to follow mandatory sentencing procedures may be harmless error. The dissent asserts that the sentencing judge's "unequivocal" remarks at the sentencing hearing demonstrate with sufficient certainty that no presentence report could have affected the outcome, thus making remand futile. For the following reasons, we respectfully disagree.

First, the *Finstad* decision, and the precedents on which it relies, are inapposite to the issues in this appeal. Those cases all turned on the showing necessary to overcome the "'high standard'" a petitioner must meet to overcome the time bar against collateral attacks on criminal convictions and obtain the "'extraordinary'" relief of upsetting a "'settled'" judgment. *See Finstad*, 177 Wn.2d at 506 (quoting *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132-33, 267 P.3d 324 (2011) (citing *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810-12, 792 P.2d 506 (1990))). The *Coats* court justified this potentially harsh time bar in part on the ground that the rights to appeal and to timely collateral review sufficiently protect defendants. *Coats*, 173 Wn.2d at 140-41.

Further, Finstad "'received the precise sentence he stipulated to in the plea agreement'" leaving no doubt as to the outcome had Finstad timely objected to the lack of findings. *Finstad*,

11

177 Wn.2d at 511 (quoting *State v. Chambers*, 176 Wn.2d 573, 586, 293 P.3d 1185 (2013)). The absence of speculation required in *Finstad* further distances it from this case, where we can only guess what information a nonexistent report might have contained. *Finstad* and the cases on which it relies do not establish that harmless error analysis applies to direct review of a trial court's failure to order a mandatory presentence report; nor do they address the points raised in our analysis above. To the extent that these precedents have any relevance here, where Brown timely objected and properly raised the issue on appeal, the cases suggest that direct appeal is precisely the vehicle by which to correct such errors.

We also do not find the sentencing court's comments as unequivocal as our dissenting colleague does. Prior to pronouncing sentence, the court stated that

> Mr. Brown, by his own actions was allowed to maintain his freedom while other folks had to endure the torture of going through a trial process, coming in and testifying in open court. . . . I think to basically reward Mr. Brown for his actions would subvert the entire process. I don't think he should be awarded [sic] by getting an additional nine years of freedom and then get a low end sentence.

VRP (Oct. 7, 2011) at 13. Certainly, these remarks establish that Brown had little chance of getting "a low-end sentence." Omitting the low end of the range, however, leaves considerable room for a different outcome: the court might have imposed anything from a mid-range sentence to consecutive exceptional sentences. Again, without the presentence report one can only speculate.

Finally, the presentence report can play a vital role in ensuring that the voices of victims are heard. Particularly significant here, RCW 9.94A.500(1) states that the court "shall consider the risk assessment report and presentence reports, if any, including any victim impact statement . . . ." The version of this provision in effect when Brown committed his crimes, former RCW 9.94A.110, is of similar effect. More broadly, the state constitution has enshrined certain rights

12

of crime victims "[t]o ensure victims a meaningful role in the criminal justice system and to accord them due dignity and respect." WASH. CONST. art. I, § 35. Our Supreme Court recently noted that "a victim impact statement is a vehicle for a victim to exercise her constitutional and statutory right to address the trial court before it imposes sentence." *Koenig v. Thurston County*, 175 Wn.2d 837, 844, 287 P.3d 523 (2012). Where such a report establishes that the impact on the victim was significantly more serious than in a typical case, it will support imposition of an exceptional sentence. *State v. Tunell*, 51 Wn. App. 274, 279-80, 753 P.2d 543 (1988), *overruled on other grounds by State v. Batista*, 116 Wn.2d 777, 808 P.2d 1141 (1991). Thus, presentence reports are an important channel for bringing the voices of victims to the court before sentencing.[5]

The importance of such victim impact statements and the presentence report are aptly illustrated by the facts of this case. The victim did not address the court or provide a written statement at sentencing, and the record reveals numerous reasons why she may not have. Even an adult would understandably feel reluctant to express her feelings about sexual abuse by a parent in such a public way, even if only in writing. A number of family members, including defendant Brown and the victim's father, were present at sentencing. In addition, a camera crew was filming the sentencing proceeding for possible broadcast on the *"Washington's Most Wanted"* television program.

Had the court below followed the statute, the investigator charged with preparing the presentence report would likely have reached out to the victim privately to seek her input. As

---

[5] The dissent responds by noting that a member of the victim's family presented an impact statement on her behalf. Again, however, without knowing what the presentence report would have said, it is impossible to know if the error in its omission harmed the defendant.

No. 42752-4-II

suggested by the facts here, such an investigation may in many cases be the only effective way to bring the voices of victims of sexual abuse before the court. Where the legislature has made such investigations mandatory, as it has done for felony sexual offenses, we should not lightly overlook a sentencing court's refusal to order one.

Former RCW 9.94A.110 required the trial court to order the Department to complete a presentence report before imposing sentence on Brown. The court did not issue this order, and the Department did not prepare the required presentence report for the court's consideration. Because we cannot know whether this error affected the outcome, we decline to apply harmless error analysis. We therefore vacate Brown's sentence and remand for resentencing according to the proper procedure.[6]

CONCLUSION

The trial court did not err in proceeding in Brown's absence, and we affirm his convictions. We vacate his sentence and remand for resentencing, however, because the court below exceeded its authority by proceeding without the mandatory presentence report.

BJORGEN, J.

I concur:

PENOYAR, J.

---

[6] Alternatively, imposition of a sentence in violation of the SRA is not within the court's authority. *See Ammons*, 105 Wn.2d at 180-81; *State v. Shove*, 113 Wn.2d 83, 86-89, 776 P.2d 132 (1989). Because this sentence violated an express requirement of the SRA to which the harmless error rule did not apply, it was therefore outside the trial court's authority.

14

No. 42752-4-II

HUNT, P.J. — I concur with the majority's affirmance of Brown's convictions. But I respectfully dissent from the majority's (1) speculation that the trial court *might* have imposed a different sentence if it had considered a presentence report, (2) refusal to consider a harmless error analysis, and (3) remand to the trial court for resentencing with a presentence report.

In my view, the lack of a statutorily required presentence report at sentencing was harmless error and remand for resentencing is a waste of resources for no commensurate gain in justice. The record shows that the likelihood of a different sentence on remand is remote, as exemplified by the trial court's following express rejection of a low end sentence because Brown had absconded for nine years after raping his daughter:

> Mr. Brown, by his own actions was allowed to maintain his freedom while other folks had to endure the torture of going through a trial process, . . . . I think · to basically reward Mr. Brown for his actions would subvert the entire process. *I don't think he should* be awarded by getting an additional nine years of freedom and then *get a low end sentence.*

Verbatim Report of Proceedings (Oct. 7, 2011) at 13 (emphasis added). I would acknowledge the statutory requirement of a presentence report, apply the harmless error test, and hold that Brown is not entitled to remand for resentencing because he fails to show that his sentencing outcome would have materially differed with a presentence report.

I. NO PREJUDICE; HARMLESS ERROR

Lack of prejudice is the essence of harmless error. As the majority notes,

> Non-constitutional error requires reversal only if, "within reasonable probabilities," the outcome of the proceeding "would have been materially affected had the error not occurred." *State v. Crenshaw,* 98 Wn.2d 789, 800, 659 P.2d 488 (1983) (citing *State v. Tharp,* 96 Wn.2d 591, 637 P.2d 961 (1981)).

15

Majority at 9. In the collateral attack context[7], the appellate court will not remand for relief even from an acknowledged improperly imposed sentence, absent a showing of actual and substantial prejudice or "a fundamental defect . . . that inherently resulted in a complete miscarriage of justice." *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013).

Here, Brown fails to show actual prejudice under any standard. Instead, he focuses on the error itself as warranting remand for resentencing primarily because the statute requires; and then he merely speculates about how a presentence report might result in a lower sentence. Even my colleagues in the majority acknowledge that identifying a different outcome with a presentence report requires "speculation" and that they "cannot assess the probability of a different outcome."[8] Such speculation, however, is not the applicable test. Rather, based on the record before us, Brown must show prejudice flowing from the claimed error such that we can articulate "within reasonable probabilities" that Brown's sentence would have been materially different had a presentence report been prepared. *Crenshaw*, 98 Wn.2d at 800.

But when we apply this test here, the record shows no such reasonable probability that the trial court would have imposed a materially different sentence even if it had a presentence

---

[7] I recognize that the scope and standard of review on direct appeal differ from those applicable to a personal restraint petition, such as the one in *Finstad*. Thus, I cite *Finstad* merely as a recent example of our Supreme Court's unwillingness to disrupt a "settled judgment," even where the State concedes the invalidity of a judgment and sentence and the trial court's "failure to follow statutory sentencing procedures," unless the petitioner shows he was "prejudiced by the claimed error." *Finstad*, 177 Wn.2d at 503, 506.

[8] *See* majority at 9:
> In the absence of any presentence investigation, we can only *speculate* as to what information a report might have contained and what effect that information might have had on the outcome. Thus, *we cannot assess the probability of a different outcome*, and therefore cannot apply harmless error analysis.

(Emphasis added.)

16

No. 42752-4-II

report to consider. On the contrary, as quoted above, the trial court expressly stated that it did not consider imposing a low end sentence because it would be unfair to the victim, especially against the backdrop of Brown's absconsion and having been at liberty for nine years after raping the victim. In my view, we need not resort to "speculation" to conclude on the record before us that a presentence report would not cause the trial court to shorten Brown's sentence.[9]

The majority relies on a Division Three opinion, *State v. Crider*, 78 Wn. App. 849, 899 P.2d 24 (1995), to support its aversion to a harmless error analysis here[10], despite our express refusal "to follow *Crider*" seven years ago in *State v. Hatchie*, 133 Wn. App. 100, 118, 135 P.3d 519 (2006), *aff'd*, 161 Wn.2d 390, 166 P.3d 698 (2007). But even if our court were to contemplate reversing *Hatchie* on this point, Brown's case does provide the appropriate context in which to reconsider our previous rejection of *Crider* because *Crider* involved denial of a defendant's absolute right to allocution at sentencing, which is not comparable to the lack of a presentence report here. Unlike my majority colleagues, I find no factual or legal bar to applying a harmless error analysis here. I would hold that the trial court's failure to order a presentence report for consideration at sentencing, though contrary to statutory mandate, had no material prejudicial effect on Brown's sentence and, thus, was harmless error.

---

[9] Even the majority agrees that "these remarks establish that Brown had *little chance* of getting 'a low-end sentence.'" Majority at 12 (emphasis added). Nevertheless, rather than focusing on whether the absence of a presentence report actually prejudiced Brown, the majority opines:
> Omitting the low end of the range, however, leaves considerable room for a different outcome: the court *might* have imposed anything from a mid-range sentence to consecutive exceptional sentences. Again, without the presentence report *one can only speculate*.
Majority at 12 (emphasis added).

[10] *See* majority at 10.

17

## II. OPPORTUNITY FOR DOC[11] INPUT

The majority further asserts that harmless error analysis is not appropriate because (1) the Sentencing Reform Act confers rights on non-litigants, such as the DOC and victims, who may submit impact statements; and (2) "presentence reports are an important channel for bringing the voices of victims to the court before sentencing." Majority at 13. I do not disagree with my colleagues' assertion that the presentence report may be an important vehicle for bringing forth these important perspectives. I do, however, disagree with the majority's implication that the trial court did not hear these perspectives and that, to the extent that these voices must be voiced through a presentence report, the absence of this medium is fatal to affirming Brown's sentence.

Here, the prosecutor appeared on behalf of the State of Washington and expressly recommended a high end standard sentence on behalf of the people of the State, including the victim, on whose behalf a family member presented her impact statement at sentencing. The record shows that, despite the absence of a presentence report, the trial court clearly heard the victim's voice; and, in response to her voice as well as other factors, it imposed the maximum sentence under the law.

Therefore, I respectfully disagree with my colleagues' conclusion that we cannot consider harmless error under the facts here and that remand for resentencing with a presentence report is necessary. In addition to affirming Brown's conviction, I would also affirm his sentence.

Hunt, P.J.

---

[11] Department of Corrections (DOC).

18