IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35146-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SCOTT M. ELLIS, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, A.C.J. — Scott Ellis appeals his convictions and sentence for second degree burglary, first degree vehicle prowling, obstructing a law enforcement officer, and third degree malicious mischief. We affirm Mr. Ellis's convictions but remand for resentencing.

FACTS

In the middle of a summer night in 2016, police were called to the Valleyway Self Storage facility in Spokane Valley, Washington. The call was prompted by unusual sounds and light emanating from a motor home stored at the facility.

Several officers responded to the scene. The officers approached the motor home and made contact with the person inside, who identified himself as Scott Ellis. Mr. Ellis told the police he had blocked the door and would not come out unless his Department of

Corrections officer was present. The police told Mr. Ellis he was under arrest and ordered him outside. Mr. Ellis refused to comply. The police deployed pepper spray through the motor home's vents. That did not work. The officers attempted to breach the motor home's door, but could not get through Mr. Ellis's barricade. Eventually, the police were able to get inside the motor home by breaking through a window. Mr. Ellis was found hiding in a rear bedroom. He still refused to leave. Finally, a combination of a police dog bite and more pepper spray led Mr. Ellis to come out and surrender.

Mr. Ellis was charged with second degree burglary (for entering/remaining in the storage facility), first degree vehicle prowling (for entering/remaining in the motor home), third degree theft (cash alleged to be missing from the motor home), obstructing a law enforcement officer, and third degree malicious mischief (for damage caused to the motor home).

Mr. Ellis testified at trial and offered an explanation for his actions. Mr. Ellis said he had gotten into an argument with his ex-wife at her home earlier that evening. The ex-wife's boyfriend allegedly threatened Mr. Ellis, so he left. After walking approximately four blocks, Mr. Ellis saw the boyfriend and another man[1] following him in a truck so he

---

[1] Mr. Ellis was able to name his ex-wife at trial, but he could not name the ex-wife's boyfriend or the other man.

began running and tried to lose them by cutting across nearby fields, parking lots, front yards, etc.  Mr. Ellis testified he did not enter one of the nearby restaurants or supermarkets (at least some of which were open) because he did not want to get anyone else involved.  Mr. Ellis eventually came across Valleyway Self Storage.  Believing it was a safe area, he walked through the front gate and into the storage facility behind a truck towing a large trailer.  Mr. Ellis then entered the second motor home he came across.  He wrapped a seatbelt around the door to keep anyone from entering, and built a barricade for the same reason.  Mr. Ellis then waited to make sure he was no longer being pursued.  While waiting, he noticed some movies and started watching one on a television inside the motor home.

Mr. Ellis then testified about what happened when the police arrived.  He explained the police arrived shortly after he turned on the television and immediately threatened him with a police dog.  Mr. Ellis said he was frightened and started reinforcing his barricade.  He testified his goal was to "stay safe."  2 Report of Proceedings (RP) (Jan. 24, 2017) at 233.  Mr. Ellis testified he "didn't have any intention of fighting the police, by any means."  *Id.* at 235.  He further testified he only entered the storage facility and the motor home to find a safe place, and he built the barricade for the same reason.  On cross-examination, Mr. Ellis agreed he had no lawful reason to be in the storage

facility or the motor home. He also testified his decisions were the result of "quick action

and thought." *Id*. at 245. Mr. Ellis described "quick action" as doing something "without

thought" while acting on "instinct or stupidity." *Id*. at 261.

Prior to the close of evidence, defense counsel indicated there was one more

witness she hoped to call, and the court agreed to recess to give counsel time to find the

witness. The defense rested the following day without calling this witness. There is no

explanation in the record for why the witness was not called, and defense counsel never

identified the witness. During closing, defense counsel argued Mr. Ellis never entered the

storage facility or the motor home with the intent to commit a crime. She acknowledged

Mr. Ellis was at the storage facility unlawfully. However, counsel argued the jury should

convict Mr. Ellis of the lesser included offenses of criminal trespass in the first and

second degree.

The jury found Mr. Ellis guilty of all charges except third degree theft.

At sentencing, defense counsel asked for an exceptional sentence downward on the

burglary charge due to the unique circumstances of the offense and Mr. Ellis's chemical

addiction and posttraumatic stress disorder (PTSD). In the alternative, counsel asked for

a prison-based drug offender sentencing alternative. In support of Mr. Ellis's request for

leniency, defense counsel presented a testimonial from one of Mr. Ellis's friends, Jessica

4

Johnson, who spoke to Mr. Ellis's addiction, mental health problems, and conflicts with his ex-wife.

The sentencing judge addressed several of Mr. Ellis's concerns. The judge found chemical dependency likely contributed to Mr. Ellis's offenses. The judge also questioned defense counsel about facts surrounding Mr. Ellis's purported PTSD diagnosis and military service. Defense counsel explained she had not been able to obtain applicable documentation. The judge ultimately stated she lacked sufficient evidence to impose a treatment-based sentence or an exceptional sentence downward. The judge noted that if additional information had been available, the outcome might have been different. The judge thereafter imposed a standard range sentence.

## ANALYSIS

*Jury unanimity—burglary and vehicle prowling*

Mr. Ellis argues his right to a unanimous jury verdict was violated because no unanimity instruction was given for the second degree burglary and first degree vehicle prowling charges. He asserts there is insufficient evidence he unlawfully entered the storage facility or the motor home with intent to commit a crime.

The Washington Constitution guarantees criminal defendants the right to a unanimous jury verdict. *State v. Woodlyn*, 188 Wn.2d 157, 162, 392 P.3d 1062 (2017);

*see also* WASH. CONST. art. I, § 21. But a particular analysis is called for when the

charged offense is an alternative means crime. *Woodlyn*, 188 Wn.2d at 163-64. A

defendant does not have an absolute right to express unanimity in the context of an

alternative means crime. *Id*. at 164. So long as all of a crime's alternative means are

supported by sufficient evidence, a general guilty verdict is constitutionally sufficient. *Id*.

Mr. Ellis claims second degree burglary and vehicle prowling are both alternative

means crimes. Specifically, both offenses require the State to prove the defendant entered

or remained in a specified location with intent to commit a crime. Mr. Ellis concedes the

State presented sufficient evidence that he illegally remained in both a building (the

storage facility) and a vehicle (the motor home). However, because Mr. Ellis was fleeing

perceived danger from his ex-wife's boyfriend at the time of entry, Mr. Ellis claims the

State has failed to present sufficient evidence of illegal entry. Because the jury was never

asked to make a unanimous finding as to illegal entry versus illegally remaining, Mr. Ellis

argues both his burglary and vehicle prowling convictions must be reversed.

Mr. Ellis's argument fails because sufficient evidence supports finding Mr. Ellis

illegally entered and remained on the premises. Contrary to the defense position, the jury

was not required to believe Mr. Ellis's explanation that he sought refuge in the storage

facility and motor home in order to escape a violent pursuit. The test for sufficiency

requires the evidence be reviewed in the light most favorable to the State, not the defense. *State v. Owens*, 180 Wn.2d 90, 99, 323 P.3d 1030 (2014). The jury easily could have rejected Mr. Ellis's claim about trying to escape a violent pursuit given his refusal to seek help from alternate sources such as the nearby restaurants and stores. Mr. Ellis's conduct, including his surreptitious entry and destruction of property, provided the jury sufficient evidence from which to conclude Mr. Ellis harbored criminal intent both when he entered the storage facility and motor home and over the course of time that he remained on the premises.

*Ineffective assistance of counsel*

Mr. Ellis argues defense counsel was ineffective for: (1) failing to request jury instructions on a necessity defense, (2) not calling Ms. Johnson as a defense witness during trial, (3) not investigating a diminished capacity defense, and (4) not requesting a bill of particulars to specify the underlying crimes on the burglary and vehicle prowling charges.

A claim of ineffective assistance of counsel implicates a defendant's constitutional rights and may be considered for the first time on appeal. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). To establish ineffective assistance, a defendant must show both deficient performance and prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35,

7

899 P.2d 1251 (1995). Counsel's performance will not be considered deficient if it can be characterized as legitimate trial strategy. *Kyllo*, 166 Wn.2d at 863. With respect to prejudice, a defendant must show "there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Id*. at 862.

We reject Mr. Ellis's claim that defense counsel unreasonably failed to pursue a necessity defense. This is not a case where the defense failed to pursue a coherent strategy. The defense reasonably attempted to obtain convictions for the lesser included crime of trespass based on Mr. Ellis's denial of criminal intent. It was not unreasonable for defense counsel to focus on this approach instead of simultaneously pursuing a necessity defense. Necessity requires the defense to proffer facts tending to show the defendant did not have any reasonable alternative to breaking the law. *State v. Kurtz*, 178 Wn.2d 466, 478, 309 P.3d 472 (2013); *State v. Jeffrey*, 77 Wn. App. 222, 225, 889 P.2d 956 (1995). Here, Mr. Ellis admitted that he opted not to seek refuge from nearby restaurants and stores because he did not want to get anyone else involved. While Mr. Ellis's admission did not preclude defense counsel from arguing Mr. Ellis lacked criminal intent (and therefore should be convicted of trespass), his testimony was inconsistent with a defense of necessity. Given this circumstance, counsel's defense

8

strategy to focus on a credible trespass defense, as opposed to a problematic defense of necessity, was entirely reasonable.

With respect to Mr. Ellis's second and third claims, pertaining to defense counsel's failure to present and investigate trial evidence, the record is insufficient to establish deficient representation. We lack any evidence about what steps defense counsel took to procure Ms. Johnson's trial testimony or information regarding Mr. Ellis's PTSD. In addition, the record does not establish that Ms. Johnson's testimony or further PTSD investigation would have been helpful to Mr. Ellis. Although Ms. Johnson's statements at sentencing suggest she was aware of conflict between Mr. Ellis and his ex-wife, it is not clear that Ms. Johnson had admissible testimony regarding the conflict between Mr. Ellis and his ex-wife on the date of the offense conduct. In addition, because many facts regarding Mr. Ellis's alleged PTSD are unknown, we cannot assess whether additional evidence could have supported a diminished capacity defense or altered the outcome of Mr. Ellis's case. Accordingly, Mr. Ellis's claims regarding counsel's failure to present evidence and witnesses cannot be resolved on direct appeal. Instead, Mr. Ellis's recourse is a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

Mr. Ellis last argues counsel was ineffective for not requesting a bill of particulars to specify what crime the State alleged he intended to commit in the storage facility or the

motor home. This claim fails for lack of prejudice. The purpose of a bill of particulars is to "amplify or clarify particular matters essential to the defense." *State v. Holt*, 104 Wn.2d 315, 321, 704 P.2d 1189 (1985). The ultimate decision about whether to grant a bill of particulars lies in the sound discretion of the trial court. *State v. Noltie*, 116 Wn.2d 831, 844-45, 809 P.2d 190 (1991). Mr. Ellis fails to show the trial court would have exercised its discretion to grant a bill of particulars had a motion been filed. The criminal information disclosed the State's theory that Mr. Ellis committed the crimes of theft and malicious mischief. Given this circumstance, defense counsel would have been hard pressed to establish further clarification was warranted. Mr. Ellis has therefore failed to show defense counsel provided ineffective assistance by failing to file a pretrial motion for a bill of particulars.

*Sentencing errors*

Mr. Ellis alleges several errors occurred during sentencing. Because we agree with Mr. Ellis that the sentencing court erroneously failed to order a chemical dependency screening and presentence report, we limit our review to those contentions.

While a standard range sentence is generally not appealable, an exception exists if the appellant can show the trial court failed to consider information mandated by RCW 9.94A.500. *See State v. Watson*, 120 Wn. App. 521, 527, 86 P.3d 158 (2004).

10

Relevant here, the statute provides:

> Unless specifically waived by the court, *the court shall order the department to complete a chemical dependency screening report before imposing a sentence* upon a defendant who has been convicted of . . . any felony *where the court finds that the offender has a chemical dependency that has contributed to his or her offense. . . . If the court determines that the defendant may be a mentally ill person* as defined in RCW 71.24.025, although the defendant has not established that at the time of the crime he or she lacked the capacity to commit the crime, was incompetent to commit the crime, or was insane at the time of the crime, *the court shall order the department to complete a presentence report before imposing a sentence.*"

RCW 9.94A.500(1) (emphasis added).

The language of this statute is "mandatory and unambiguous." *State v. Brown*, 178 Wn. App. 70, 79, 312 P.3d 1017 (2013). It therefore controls our assessment of Mr. Ellis's case. In her oral ruling, the sentencing judge specifically found that "chemical dependency likely contributed to" Mr. Ellis's offenses. 3 RP (Feb. 17, 2017) at 412. Given this finding, a chemical dependency screening report was required. In addition, the judge expressed concern that Mr. Ellis may well have suffered from mental illness due to his military service. The judge lamented the absence of additional information. Based on the judge's reasonable concern that Mr. Ellis might be a mentally ill person, the judge was required to order a presentence report.

Although the information regarding Mr. Ellis's chemical dependency and mental illness did not come to the judge's attention until the time of sentencing, this does not

11

alter our analysis. RCW 9.94A.500(1) requires the court order a chemical dependency screening report and presentence report if the relevant information comes to light "[b]efore imposing a sentence." A sentence is not imposed until it is ordered by the court at a sentencing hearing. Thus, contrary to what is urged by the dissent, RCW 9.94A.500(1) is not limited to the presentencing context. Instead, the statute creates a continuing obligation on the sentencing court to order reports, if factually appropriate, up until the moment a sentence is announced. Given the mandatory language used in the statute, a court cannot proceed with imposing a sentence if a report is required. Instead, the court's only option is to continue the sentencing hearing pursuant to RCW 9.94A.500(1) (permitting a court to continue a sentencing hearing on its own motion for good cause).

Because Mr. Ellis's sentence was imposed without the benefit of a chemical dependency screening report or presentence report as required by RCW 9.94A.500(1), Mr. Ellis's sentence must be reversed and this matter must be remanded for resentencing after preparation and consideration of the two reports. The court on remand is free to select a sentence different from the one originally imposed, if factually and legally warranted. We do not prejudge whether the information contained in a chemical dependency screening report or presentence report might justify a different sentence.

12

No. 35146-7-III
*State v. Ellis*

CONCLUSION

We affirm Mr. Ellis's convictions, but remand for resentencing. As there was no substantially prevailing party on review, no action is necessary on Mr. Ellis's motion to deny appellate costs.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, A.C.J.

I CONCUR:

_____
Fearing, J.

13

No. 35146-7-III

KORSMO, J. (dissenting) — The majority reads RCW 9.94A.500 out of context.
This is a presentencing procedural statute, telling trial judges when they can order
presentence investigations (PSI) or chemical dependency evaluations. It stands the
purpose of the statute on its head to order an evaluation *after* sentencing, since the
purpose of the evaluation is to help inform the sentencing decision. The trial judge
correctly understood the purpose of the statute and declined to continue sentencing for
the purpose of obtaining more mental health records because it was time to conclude the
case. 3 Report of Proceedings (RP) (Feb. 17, 2017) at 411. Moreover, the defense did
not seek an exceptional sentence for any of the reasons mentioned by the majority since
they are not legally available reasons for a mitigated sentence and was not prejudiced by
the alleged error. For both reasons, I dissent.

The title of the statute is: "**Sentencing hearing—Presentencing procedures—
Disclosure of mental health services information**." This indicates the purpose of the
statute is to govern the sentencing hearing and the procedures leading up to it. The first
paragraph of § 500(1) tells the court when to conduct a sentencing hearing and empowers
the court to continue the hearing. The decision whether or not to continue a sentencing
hearing is within the discretion of the trial judge. *E.g.*, *State v. Roberts*, 77 Wn. App.

678, 685, 894 P.2d 1340 (1995).  The remaining provisions of § 500 address procedures prior to the hearing and what is done with the assembled information at and after sentencing.

Some of the procedures specified in the statute expressly indicate that the actions authorized by § 500 are conducted prior to sentencing—or not at all.  For instance, the second paragraph of § 500(1) directs trial courts to order risk assessments in some situations, prohibits them in others, and grants discretionary authority to order them in the remaining cases.  The paragraph then concludes with the following sentence: "If available before sentencing, the report shall be provided to the court."  Thus, if the mandatory risk assessment is not timely reported to the trial court, it will not be considered at sentencing.  Similarly, the third paragraph expressly states that "at the time of plea or conviction," the court shall order a PSI for a convicted sex offender.

The remainder of the statute implicitly stands for the same proposition—the powers granted trial courts (or the directives to them) are to be exercised at the time of conviction, not at the time of sentencing.  The "finding" that the trial court entered at sentencing was simply an acknowledgement that Mr. Ellis used methamphetamine and that it was a contributing factor to his crime.[1]  It should not operate to undo the

---

[1] I understand based on anecdotal evidence that this finding is useful during intake screening at the Department of Corrections, but I have been unable to locate any regulations or policies that address the topic.

2

sentencing and require that the process be done over. If it was intended to have that effect, the legislature would have prohibited the court from acting without the report.

The second reason I dissent is that a remand for the reasons stated by the majority is absolutely useless because the trial court would be unable to act on the theories offered. Neither a mental health condition nor a drug dependency are bases for an exceptional sentence, with the latter having been prohibited by the legislature since the very enactment of the SRA (Sentencing Reform Act of 1981, ch. 9.94A RCW).[2] RCW 9.94A.535(1)(e) (voluntary use of drugs or alcohol not a mitigating factor); LAWS OF 1983, ch. 115, §10 (same); *State v. Hutsell*, 120 Wn.2d 913, 845 P.2d 1325 (1993) (cocaine dependence); *State v. Allert*, 117 Wn.2d 156, 815 P.2d 752 (1991) (alcoholism); *State v. Pennington*, 112 Wn.2d 606, 772 P.2d 1009 (1989) (need for treatment not mitigating factor).[3] The only basis for imposing a mitigated exceptional sentence is if the facts of the case demonstrate that the *crime* is less egregious than typical for the offense; the offender's personal characteristics are not relevant.[4] *See State v. Law*, 154 Wn.2d 85,

---

[2] This is consistent with the longstanding legislative policy that alcohol or drug use do not constitute a defense to criminal activity. RCW 9A.16.090.

[3] The opinion concluded: "we hold, as a matter of law, that a drug or alcohol problem in and of itself is not a substantial or compelling reason justifying imposition of an exceptional sentence." *Pennington*, 112 Wn.2d at 611.

[4] A constitutionally required exception to this policy involves youthful offenders whose crimes demonstrate the hallmarks of immaturity. *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017).

89, 101-104, 110 P.3d 717 (2005); *State v. Fowler*, 145 Wn.2d 400, 411, 38 P.3d 335 (2002).

Indeed, defense counsel correctly understood that her client's mental health and addiction problems were not valid bases for an exceptional sentence and told the judge that at sentencing and in her presentence briefing. RP at 397-398; Clerk's Papers at 86-87. She, instead, quite properly directed her argument to a contention that the facts of this crime were less egregious than typical. That is the only basis on which an exceptional sentence can be based. *Law*, 154 Wn.2d at 89. However, given that few burglars barricade themselves inside someone else's home and then help destroy it, the trial court understandably rejected this argument. RP at 411-412. While the majority notes that the trial judge expressed sympathy for the defendant and indicated an interest in having his problems addressed, that does not mean the trial judge could have acted along the lines suggested by the majority, even if Mr. Ellis had asked the court to do so.[5]

---

[5] Indeed, this court has previously reversed the same trial judge for imposing an exceptional sentence on those same grounds. *See State v. Galindo*, noted at 160 Wn. App. 1033 (2011). On remand, the trial court imposed a standard range sentence. *State v. Galindo*, No. 30547-3-III (Wash. Ct. App. Mar. 19, 2013) (unpublished), http://www .courts.wa.gov/opinions/pdf/305473.pdf.

4

If the trial court on remand imposes an exceptional sentence[6] based on either of these grounds, this court would be forced to reverse the sentence under *Pennington* and its many progeny. Remanding this case for an evaluation of an uncontested fact and possible imposition of an improper exceptional sentence is a waste of resources. The legislature intended the evaluation to assist in sentencing, not as a basis for overturning a sentence. The only lesson of this case is that sentencing judges should not make gratuitous findings. They only result is additional work for everyone involved in the case.

I would affirm.

_____
Korsmo, J.

---

[6] Nor would the missing evaluation have assisted with the decision whether or not to impose a prison-based DOSA sentence. RCW 9.94A.660, .662. The trial court expressly rejected the DOSA proposal as being insufficient under the facts of the case and because the defendant had recently failed to take advantage of another inpatient treatment program. RP at 411-413.